UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

Ally Financial Inc.,

    Plaintiff,

vs.

M.B. Thomas RV Sales, Inc.,

    Defendant.

Case No. 4:16-cv-1080

## COMPLAINT

Plaintiff Ally Financial Inc. ("Ally") alleges as follows:

### GENERAL ALLEGATIONS

1. Plaintiff Ally is, and at all times material hereto has been, a Delaware corporation, with its principal place of business located at 200 Renaissance Center, Detroit, Michigan, and is the successor in interest by name change to GMAC Inc., also formerly known as GMAC LLC and General Motors Acceptance Corporation or GMAC. Ally's international headquarters are located in the City of Detroit, County of Wayne, Michigan. Therefore, Ally is a citizen of Delaware and Michigan.

2. Ally is informed and believes and thereon alleges that defendant M.B. Thomas RV Sales, Inc. ("Dealer") is a corporation organized under the laws of the state of Missouri, with its principal place of business in St. Louis, Missouri. Therefore, Dealer is a citizen of Missouri.

3. This Court possesses original jurisdiction of this civil action based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States.

4. Venue is proper in the Eastern District of Missouri pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims asserted herein

1

occurred in the Southern District of Illinois and Defendant is subject to the court's personal jurisdiction with respect to this action.

5. At all times herein mentioned, Dealer was engaged in the business of selling recreational vehicles and providing financing for its customers. In connection with the sale transactions, Dealer entered into retail installment sales contracts with its customers. Dealer would then assign the retail installment sales contracts for value to various financial institutions, including Ally. Following Dealer's assignment of retail installment sales contracts to Ally, Dealer's customers were then obligated to make monthly installment payments under those contracts to Ally.

6. Ally and Dealer entered into an agreement titled Ally Financial Master Retail Agreement for Recreational Vehicles (the "Master Retail Agreement"), which along with the assignment provisions in individual retail installment sales contracts, governed the relationship between the two entities with respect to Dealer's assignment of motor vehicle retail installment sales contracts to Ally. A true and correct copy of the Master Retail Agreement is attached as **Exhibit A** and incorporated by this reference.

7. Pursuant to the terms of the Master Retail Agreement, Dealer offered certain sales contracts to Ally, which it can purchase from Dealer at its discretion. The Master Retail Agreement provides that if Ally elects to purchase a contract tendered by Dealer, the purchase is made pursuant to the terms of the Master Retail Agreement as well as the terms of each individual contract assigned.

8. On or about July 2, 2011, James Dirienzo entered into a retail installment contract and security agreement (the "Contract") with Dealer in order to finance the purchase of a 2012 Forest River Berkshire, VIN 4UZAB2DT8CBF0982 (the "Vehicle"). As security for Mr. Dirienzo's obligations under the Contract, Mr. Dirienzo granted Dealer a security interest in the Vehicle. Subsequently, Dealer assigned the Contract and security interest in the Vehicle to Ally, and Ally assigned Mr. Dirienzo account number xxx-xxxx-16641 (the "Account"). A true

and correct copy of the Contract is attached hereto as **Exhibit B** and incorporated herein by this reference.

9. The Master Retail Agreement expressly incorporates by reference various other agreements including an agreement titled Ally Retail Plan. A true and correct copy of the Ally Retail Plan is attached as **Exhibit C** and incorporated by this reference.

10. The Ally Retail Plan provides, among other things, that:

> **Section 3**. Registration and Titling. Dealer shall promptly register and title Units that are motor vehicles in a manner sufficient to perfect in Ally's favor a valid and enforceable first priority security interest in the Unit. Dealer shall promptly complete the necessary forms and documents at the time of sale and forward them together with the appropriate fees to those public officials who are responsible for issuing the certificate of title or registration. If a Unit is not a motor vehicle, then Dealer shall take the actions necessary to perfect in Ally's favor a valid and enforceable first priority security interest in the Unit, and follow any other instructions provided by Ally or an affiliate. If a first priority security interest in the Unit is not perfected within one hundred twenty (120) days of Contract consummation, Dealer shall accept reassignment of the Contract and pay the full amount of the unpaid balance under the Contract to Ally upon demand.

Ex. B, §3.

11. Dealer failed to register and title the Vehicle sufficient to perfect in Ally's favor a valid and enforceable first priority security interest in the Vehicle.

12. By letter dated June 6, 2016, Ally demanded that Dealer repurchase the Contract and pay the full amount of the unpaid balance under the Contract to Ally. Dealer refused to do so. A true and correct copy of the June 6, 2016 letter is attached as **Exhibit D** and incorporated by this reference.

**First Cause of Action**
**(Breach of Contract Against Dealer)**

13. Ally herein incorporates by reference as though fully set forth paragraphs 1 through 12, inclusive.

14. On or about July 2, 2011, James Dirienzo entered into the Contract with Dealer in order to the purchase the Vehicle. As security for Mr. Dirienzo's obligations under the Contract,

3

Mr. Dirienzo granted Dealer a security interest in the Vehicle.  Dealer subsequently assigned the Contract and security interest in the Vehicle to Ally.

15. In violation of Section 3 of the Ally Retail Plan, Dealer has failed and refused and continues to fail and refuse to register and title the Vehicle sufficient to perfect in Ally's favor a valid and enforceable first priority security interest in the Vehicle.

16. Further in violation of Section 3 of the Ally Retail Plan, Dealer has failed and refused to repurchase the Contract and pay the full amount of the unpaid balance under the Contract to Ally.  As of June 29, 2016 the outstanding balance under the Contract totals $111,850.70.  Fees and costs continue to accrue.

17. The Master Retail Agreement expressly incorporates by reference various other agreements including an agreement titled Additional Terms Applicable to the Master Agreement and Retail Documents (the "Additional Terms").  A true and correct copy of the Additional Terms is attached as **Exhibit E** and incorporated by this reference.

18. Under the Additional Terms, Dealer agreed to pay reasonable attorneys' fees and costs incurred by Ally in enforcing its rights.  By reason of Dealer's breach of the Ally Retail Plan, it has become necessary for Ally to employ the undersigned counsel to commence and prosecute this action.  Ally is entitled to recover its attorneys' fees and costs incurred herein.

WHEREFORE, Ally prays for judgment as hereinafter set forth below.

**Second Cause of Action**
**(Money had and Received Against Dealer)**

19. Ally herein incorporates by reference as though fully set forth paragraphs 1 through 18, inclusive.

20. Ally took assignment of the Contract from Dealer and financed the purchase of the Vehicle.  Dealer breached its warranties, representations, covenants to, and agreements with Ally, and became indebted to Ally in an amount no less than $111,850.70, as provided under the terms of the Master Retail Agreement, Ally Retail Plan, and Contract assigned to Ally.

21.     There is due, owing and payable from Defendants to Ally an amount no less than $111,850.70, as provided under the terms of the Master Retail Agreement, Ally Retail Plan, and Contract assigned to Ally.

WHEREFORE, Ally prays for judgment as hereinafter set forth below.

## **PRAYER**

Ally prays for judgment against Defendants, and each of them, as follows:

1.      For compensatory damages in an amount according to proof at time of trial but in no event less than $111,850.70;

2.      For reasonable attorneys' fees incurred herein pursuant to the Master Retail Agreement, Ally Retail Plan, Additional Terms, and Contract assigned to Ally, or as otherwise allowed by law;

3.      For costs of suit herein;

4.      For prejudgment interest to the maximum extent permitted by law; and

5.      For such other and further relief as the court may deem just and proper.

DATED:  July 1, 2016                                GOLDENBERG HELLER & ANTOGNOLI, P.C.

/s/ Kevin P. Green
Thomas P. Rosenfeld, #35305MO
tom@ghalaw.com
Kevin P. Green, #63497MO
kevin@ghalaw.com
2227 South State Route 157
Edwardsville, IL  62025
Telephone:  (618) 656-5150
Facsimile:  (618) 656-6230

7733 Forsyth Blvd., Suite 800
Clayton, MO  63105
Telephone:  (314) 241-6566
Facsimile:  (314) 241-6230

SEVERSON & WERSON
A Professional Corporation
Duane M. Geck*
dmg@severson.com
Andrew S. Elliott*
ase@severson.com
One Embarcadero Center, Suite 2600

San Francisco, CA 94111
Telephone:  (415) 677-.5542
Facsimile:   (415) 956-0439

*Pro hac vice* admission to be sought

*Attorneys for Ally Financial Inc.*

Case: 4:16-cv-01080   Doc. #:  1   Filed: 07/01/16   Page: 6 of 6 PageID #: 6